**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KAREN SHEEDY** | : |
| **162-B Park Avenue** | |
| **Ambler, PA 19002** | : |
| **Plaintiff** | |
| | : |
| **v.** | |
| | : |
| **CITY OF PHILADELPHIA** | |
| **1101 Market Street** | : |
| **Philadelphia, PA  19107** | |
| **and** | : |
| | |
| **COMMISSIONERS JOHN TIMONEY** | : |
| **& SYLVESTER JOHNSON** | |
| **PHILADELPHIA POLICE DEPT.** | : |
| **1101 Market Street** | |
| **Philadelphia, PA  19107** | : |
| **and** | |
| | : |
| **WILLIAM HOLMES** | |
| **1101 Market Street** | : |
| **Philadelphia, PA 19107** | |
| **and** | : |
| | |
| **RICHARD P. GILLY** | : |
| **525 Montgomery Road** | |
| **Ambler, PA 19002** | : |
| **Defendants** | |
| | : |

**NO.**

**COMPLAINT**

1.  This is a civil action seeking damages against Defendants committing acts, under color of law, which deprived Plaintiff of rights secured under the Constitution and laws of the United States and the Commonwealth of Pennsylvania; for conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny Plaintiff equal protection of laws; and for refusing or neglecting to prevent such deprivations and denials to Plaintiff.

2.  The Court has jurisdiction of this action under 42 U.S.C. § 1983, 1988 and 28 U.S.C. § 1331, 1343 and 1367.

3.  Plaintiff, Karen Sheedy, is a citizen and resident of Pennsylvania and the United States of America.

4.  Defendant, City of Philadelphia (hereinafter referred to as "Defendant City"), is a Municipal Corporation, organized under the laws of the Commonwealth of Pennsylvania.

5.  Defendants, John Timoney and Sylvester Johnson (hereinafter referred to as "Defendants Timoney and Johnson"), are the Commissioners of Police for the City of Philadelphia during the times that Plaintiff was subjected to investigation, arrest, criminal hearings and sting operations.

6.  Defendant, William Holmes (hereinafter referred to as "Defendant Holmes"), is a Detective employed by the Philadelphia Police Department.

7.  Defendant, Richard Gilly (hereinafter referred to as "Defendant Gilly"), is a citizen and resident of Pennsylvania and the United States of America.  He is an attorney and licensed to practice law in Pennsylvania and an officer of the courts that derive their authority and jurisdiction from the Supreme Court and Commonwealth of Pennsylvania.

8.  Plaintiff sues each and all Defendants in their individual and official capacities.

9.  At all times material to this Complaint, Defendants Timoney, Johnson, Holmes and Richard Gilly acted under color of law and under the color of the statutes, customs, ordinances, and usage of the State of Pennsylvania, the City of Philadelphia and the Philadelphia Police Department.

10.  At all times relevant, Defendants acted jointly and in concert with each other.  Each individual Defendant had the duty and opportunity to protect the Plaintiff from the unlawful actions

2

of the other Defendants but each Defendant failed and refused to perform such duty, thereby violating Plaintiff's Constitutional rights.

11.  In October of 1994, Plaintiff and Defendant, Richard Gilly, were married.

12.  In 1996, Plaintiff purchased a house jointly with Defendant Gilly located at 219 East Meade Street, Philadelphia, PA 19118.

13.  During their marriage, Plaintiff and Defendant Gilly started a family and have two children.

14.  In or around January of 1998, Plaintiff and Defendant Gilly became separated.

15.  Though separated, Plaintiff and Defendant Gilly lived under the same roof for the purpose of raising their children.

16.  In February of 2000, Plaintiff filed for a divorce.

17.  In August of 2000, due to the stress and difficulty from her failed marriage and living arrangements, Plaintiff left her home and moved in with her parents.

18.  Defendant Gilly stayed in the marital residence.

19.  After Plaintiff moved out, Defendant Gilly changed the locks to the marital residence to prevent Plaintiff from entering.

20.  Since January of 1998, Plaintiff attempted to amicably end her marriage with Defendant Gilly and work out a custody arrangement of their two children.

21.  Opposing Plaintiff's attempts at amicable resolution, Defendant Gilly began a continual course of conduct, which included threats, intimidation, verbal abuse and mental abuse, to impede Plaintiff's attempts to amicably end the marriage and reach a mutually acceptable custody

arrangement.

22.   This conduct included making knowingly false statements in court proceedings which consisted of accusing Plaintiff of having mental infirmities and emotional instabilities so as to make her unfit as a mother.

23.   These false representations were made for the malicious purpose of depriving Plaintiff of her custody rights and to keep her apart from her children.

24.   Though Plaintiff and Defendant Gilly had jointly purchased the house on Meade Street, Defendant refused to allow her to retrieve her premarital belongings or even a small portion of the marital property located at Meade Street.

25.   Plaintiff, through her divorce attorney, made repeated demands that she be able to retrieve her belongings.

26.   In July of 2001, the attorneys for both Plaintiff and  Defendant Gilly arranged for Plaintiff to retrieve her property from the marital residence.  Based upon the parties' attorney-negotiated agreement, Defendant Gilly was to allow Plaintiff to retrieve her belongings from her home on August 1, 2001.

27.   Relying on the aforesaid agreement, members of Plaintiff's family were traveling to Philadelphia for the sole purpose of helping her move her belongings from the marital residence.

28. However, when Plaintiff sought to confirm the date to retrieve her belongings, Defendant Gilly reneged on the attorney-arranged agreement and, in a nasty and intimidating manner, told Plaintiff that she would never retrieve any of her belongings.

29. Plaintiff continued to seek help from her divorce attorney to retrieve her belongings from

her home, but Defendant Gilly refused to cooperate.

30.  On or about November 24, 2001, while Defendant Gilly was on vacation, Plaintiff was forced to hire a locksmith to enter her home on Meade Street and remove her personal property and a small portion of the marital property.

31.  When Defendant Gilly came home, he was able to immediately obtain the new key to the lock installed by Plaintiff.

32.  On or around November 27, 2001, Defendant Gilly prepared a narrative report containing several misrepresentations and untruths about Plaintiff and accused Plaintiff of theft and burglary. A true and correct copy of said narrative is attached hereto as Exhibit "A".

33.  Defendant Gilly supplied the false narrative report to Philadelphia Police Department and requested that criminal charges be brought against Plaintiff.

34.  Relying upon the narrative from Defendant Gilly the Defendants Timoney and Police Department assigned the case to Defendant Holmes for investigation.

35.  In the narrative report, Defendant Gilly failed to tell the police that Plaintiff was an owner of the Meade Street property.

36.  Defendant Gilly failed to tell the police that Plaintiff had on several occasions attempted to remove her belongings with his cooperation.

37.  Defendant Gilly misrepresented to the police the items Plaintiff retrieved from her home.

38.  After Defendant Holmes was assigned to investigate Defendant Gilly's allegations, he did not contact Plaintiff.

39.  Though Defendant Holmes knew that Defendant Gilly was married to Plaintiff, he failed

5

to investigate whether Plaintiff was an owner of 219 East Meade Street and had a right to enter the marital residence.

40.  From late November of 2001 until January 2002, Defendant Gilly repeatedly contacted the Police Department and Defendant Holmes inquiring as to the status of the criminal investigation.

41.  Defendant Gilly's repeated communications and misrepresentations to the Philadelphia Police Department and Defendant Holmes eventually led to the arrest of Plaintiff.

42.  Relying solely upon the fabrications of Defendant Gilly, Defendants Holmes and Police Department failed to conduct an investigation to learn if Defendant Gilly's allegations were true.

43.  In January of 2002, Plaintiff was left a phone message by the Philadelphia Police Department.

44.  On three separate occasions, Plaintiff attempted to contact the Philadelphia Police Department but could not learn why she was contacted by the police.

45.  She informed her lawyer of the aforementioned police contacts.

46.  Her lawyer contacted the police and learned that the Philadelphia Police Department had obtained a warrant for her arrest.

47.  Upon learning of this information, Plaintiff turned herself into the police.

48.  She was processed, handcuffed and taken to the Roundhouse where she was incarcerated for a period of two days.

49.  Plaintiff's parents were required to suffer the great indignity of having to pay bail and retrieve their daughter from prison.

50.  Plaintiff was forced to retain and pay a criminal attorney.

51.  Plaintiff attended two preliminary hearings.

52.  At the second preliminary hearing, upon learning that Plaintiff was an owner of 219 East Meade Street, the assistant district attorney dismissed the charges.

53.  At all times relevant, Defendant Gilly acted in a malicious manner for the sole purpose of harming and ruining Plaintiff's reputation and status within her community so as to gain an advantage in obtaining greater custody rights of their children.

54.  At all times relevant, Defendants Timoney, Johnson Police Department and the City of Philadelphia failed to properly instruct, train or educate Defendant Holmes and other police employees to perform the functions and duties necessary to conduct investigations.

55.  At all times relevant, Defendants Timoney and Johnson and City failed to enforce policies in place to avoid unjust and false arrests.

## COUNT I - FEDERAL CLAIMS
## CIVIL RIGHTS - 42 U.S.C. § 1983

56.  Plaintiff incorporates by reference paragraphs 1 through 55 of this Complaint as though same were fully set forth at length herein.

57.  At all times relevant, Defendants Holmes, Timoney, Johnson and City of Philadelphia unjustly detained Plaintiff without probable cause, caused Plaintiff to be arrested, handcuffed and placed into the custody of Philadelphia Police Department.

58.  At all times relevant, Defendant Gilly acted in concert with the other Defendants for the sole reason to deprive Plaintiff of her rights to freedom of speech, freedom to petition for redress of grievances, freedom from unreasonable arrest, search and seizure, freedom from arrest without probable cause, and freedom from process of the law.  All of these rights are secured to Plaintiff by

provisions of the First, Second, Fourth, Eighth and Fourteenth Amendments to the United States Constitution and by 42 U.S.C. § 1983 and 1988.

59.   Defendants Holmes, Timoney, Johnson and Philadelphia Police Department operate under the supervision and control of Defendant City of Philadelphia.

60.   In an attempt to cover up their said violations of Plaintiff's rights and freedoms, Defendants swore out a complaint against Plaintiff accusing her of burglary and theft as well as other similar crimes when Defendants knew that Plaintiff had not committed any crime.

61.   Defendants thereupon prepared false police reports and/or gave false statements, which they knew and intended would be forwarded to a prosecuting attorney and relied upon by the prosecuting attorney in deciding whether to prosecute the Plaintiff, if so, the manner in which Plaintiff's prosecution should be handled.   In preparing and giving said reports and statements, Defendants acted maliciously and willfully.

62.   The investigation conducted by Defendants Timoney, Johnson, Holmes and City and their actions taken thereupon were taken in bad faith or in the alternative, done in a reckless manner.

63.   The wrongful acts of Defendants complained of herein were undertaken maliciously and include, without limitation, the following:

a.   Intentionally causing the arrest of Plaintiff when the Defendants knew or should have known there were no grounds nor probable cause for her arrest;

b.   The failure of Defendants to interview witnesses, including Plaintiff, to substantiate the allegations of Defendant Gilly;

c.   The failure of Defendants to take into account facts which they knew cleared the Plaintiff;

d.   The intent of Defendants from the beginning of their investigation to charge Plaintiff or cause Plaintiff to be charged with a crime;

e.  The failure of Defendants Timoney, Johnson and City of Philadelphia to properly and adequately train the officers in investigative techniques and procedures;

f.  The preparation of groundless reports and affidavits in order to obtain an arrest warrant against the Plaintiff; and

g.   The procurement of groundless charges against the Plaintiff based upon incomplete, unsupported evidence which the Defendants knew or should have known were false, distorted and fabricated.

64.  As a direct and proximate result of the acts and omissions of the Defendants herein described, the Plaintiff was incarcerated for a period of approximately two days, was required to spend money to consult with an attorney to defend herself against the said false charges, was required to spend money to post bail to purchase her freedom, was required to appear in the Court of Common Pleas of Philadelphia as an accused criminal, was unable to enjoy life in the manner customary for her, was wrongfully subjected to a police sting operation to arrest individuals subject to criminal bench warrants, was caused great mental and emotional pain, anguish and suffering, and had been chilled in her exercise of her rights to freedom of speech, property, the pursuit of happiness and, in addition, has suffered the loss of all the constitutional rights described herein.

65.  In the manner described herein, Defendants acted with reckless disregard of the Plaintiff's Constitutional rights.

66.  In the manner described herein, Defendants deprived Plaintiff of her rights to freedom of speech, freedom to petition for redress of grievances, freedom from unreasonable arrest, search

and seizure, freedom from arrest without probable cause, and freedom from process of the law.  All of these rights are secured to Plaintiff by provisions of the First, Second, Fourth, Eighth and Fourteenth Amendments to the United States Constitution and by 42 U.S.C. § 1983 and 1988.

## COUNT II
## STATE LAW CLAIMS

67.  Plaintiff hereby incorporates by reference paragraphs 1 through 66 of this Complaint as though same were fully set forth at length herein.

68.  In the manner described herein, Defendants' acts constitute, malicious prosecution, abuse of process, violations of  Plaintiff's rights under the Constitution of the Commonwealth of Pennsylvania, violation of Plaintiff's right to be free from arrest without probable cause, false imprisonment, intentional infliction of emotional distress and negligent infliction of emotional distress.  All of these rights and claims are secured to Plaintiff under the laws of Pennsylvania which are invoked under the supplementary jurisdiction of this court.

69.  Defendants knew or should have known that their actions would or probably would inflict extreme emotional distress upon Plaintiff.

70.  The actions of Defendants are extreme and outrageous.

71.  The aforementioned actions of Defendants have caused Plaintiff to suffer damages in the same manner as that set forth in paragraphs 64 and 66 above, which are incorporated herein at length.

## COUNT III
## PUNITIVE DAMAGES

72.  Plaintiff hereby incorporates by reference paragraphs 1 through 71 of this Complaint as though same were fully set forth at length herein.

73.   The conduct of Defendants is outrageous, and was done in a deliberate, callous,

malicious, fraudulent and oppressive manner, was intended to injure Plaintiff, was with an improper and evil motive amounting to malice and spite caused by actual facts of personal actions, animosity, jealousy, bias, hatred, and was done in conscious disregard of Plaintiff's rights.  Therefore, Plaintiff is entitled to an award of punitive damages from Defendants in an amount according to proof.

## JURY DEMAND

Plaintiff demands a jury of twelve jurors.

**WHEREFORE**, Plaintiff, Karen Sheedy, demands judgment against all Defendants and each of them, jointly and severally as follows:

a.    compensatory damages;
b.    damages for pain and suffering;
c.    punitive damages;
d.    attorney fees and the costs of this action; and
e.    such other relief as this Court shall consider to be fair and equitable.

_____
WILLIAM J. FOX, ESQUIRE
Attorney for Plaintiff
1626 Pine Street
Philadelphia, PA  19103
(215) 546-2477